877 So.2d 854 (2004)
BERTANY ASSOCIATION FOR TRAVEL AND LEISURE, INC., Business Association for Trade and Labor, Inc., Quik Quote Insurance Brokers, Inc., Susan Pine, and Ray Pinto, Appellants,
v.
FLORIDA DEPARTMENT OF FINANCIAL SERVICES, Office of Insurance Regulation, Appellee.
No. 1D03-2635.
District Court of Appeal of Florida, First District.
July 9, 2004.
Edward W. Dougherty, Jr. and Thompkins W. White, of Igler & Dougherty, P.A., Tallahassee, for appellants.
Clifford A. Taylor, Assistant General Counsel, Office of Insurance Regulation, Tallahassee, for appellee.
WOLF, C.J.
This is an appeal of an Immediate Final Order ("IFO") issued by the Department of Financial Services, Office of Insurance Regulation ("OIR") against appellants Susan Pine and Ray Pinto who are the corporate officers of appellants Bertany Association *855 for Travel and Leisure, Inc. (Bertany), Business Association for Trade and Labor, Inc. (BAFTAL), and Quik Quote Insurance Brokers, Inc. (QQIB).[1] The IFO involves the sale and administration of a health insurance product not authorized by the State of Florida. Because we find on its face the IFO sufficiently states particularized facts showing an immediate danger to the public welfare, we affirm.
The IFO was rendered pursuant to section 120.569(2)(n), Florida Statutes (2003), which provides in relevant part:
If an agency head finds that an immediate danger to the public health, safety, or welfare requires an immediate final order, it shall recite with particularity the facts underlying such finding in the final order, which shall be appealable or enjoinable from the date rendered.
The IFO "must allege facts showing that specific incidents of irreparable harm to the public interest will occur without an immediate cease and desist order." Commercial Consultants Corp. v. Dep't of Bus. Reg., Div. of Fla. Land Sales & Condos., 363 So.2d 1162, 1164 (Fla. 1st DCA 1978). In order to satisfy due process requirements, this court held in Premier Travel International, Inc. v. State of Florida Department of Agriculture & Consumer Services, 849 So.2d 1132 (Fla. 1st DCA 2003), that an IFO must contain factual allegations demonstrating the following:
1. The complained of conduct was likely to continue.
2. The order was necessary to stop the emergency.
3. The order was sufficiently narrowly tailored to be fair.
Id. at 1132-1135.
On appeal, appellants' primary attack is on the first requirement, focusing on the lack of allegations establishing the "immediacy" of the alleged harm and whether there is a pattern of conduct likely to continue. In Saviak v. Gunter, 375 So.2d 1080 (Fla. 1st DCA 1979), we emphasized that allegations of past conduct could reflect the continuing nature of the offense. Id. at 1082. See also Stock v. Dep't of Banking & Fin., 584 So.2d 112, 115 (Fla. 5th DCA 1991) ("There is ample precedent supporting the suspension of a licensee upon showing of past harm when the harm is sufficiently serious and of a nature likely to be repeated."). Appellants rely on Premier Travel and Crudele v. Nelson, 698 So.2d 879 (Fla. 1st DCA 1997), for the proposition that the IFO should be reversed because the facts fail to establish the continuing nature of the alleged danger to the public. Unlike this case, in Premier Travel the IFOs did not indicate that the alleged conduct was likely to continue. Premier Travel, 849 So.2d at 1135. In Crudele, there were no allegations or findings suggesting anything in Crudele's history that would support an inference of continuing bad conduct. Crudele, 698 So.2d at 880. Moreover, this court found it important that Crudele's conduct upon which the emergency order was based occurred "well over two years before the issuance of the emergency order of suspension." Id.
Unlike the orders in Premier and Crudele, the IFO against appellants contains allegations of past and recent conduct which would support an inference that appellants' unauthorized activity may continue absent a cease and desist order. The IFO alleges that appellants previously were involved with the unauthorized administration *856 of health insurance products. It further alleges that in February 2003, appellants were advised by the issuer of a health insurance product not authorized in Florida that they were not to sell the product. Despite this notification, appellants began a marketing operation of the unauthorized product in February 2003. As of March 2003, appellants had sold approximately ten unauthorized policies. In April 2003 an agent had sold two more unauthorized policies through appellant BAFTAL which were to start in May 2003. As of the date of the order, May 23, 2003, there were two-thousand unrevoked solicitations for the unauthorized product and appellants were still advertising health insurance on a website. These allegations of previous conduct coupled with the allegations regarding the recent conduct were sufficient to establish the continuing nature of appellants' conduct.
Appellants also argue the IFO is not narrowly tailored to be fair. The decretal portion of the IFO orders appellants to stop selling unauthorized products or acting as unauthorized administrators. Specifically, appellants are ordered to "CEASE AND DESIST from the transaction of any new or renewal insurance business as or on behalf of unauthorized insurers." Appellants are also required to notify their agents and members that no further applications would be accepted for any unauthorized product in Florida, and appellants are required to provide the OIR an accounting of all premiums or dues collected and health claims paid or incurred since the marketing operation of the unauthorized product in February 2003. We reject appellants' argument that these requirements were the equivalent to a suspension of their licenses. Cf. Premier Travel (involving IFOs which suspended appellants' registrations, required them to cease operation as sellers of all travel, and required appellants to stop selling any business opportunities); Crudele (reversing IFO where Insurance Commissioner suspended all insurance licenses in appellant's name). The IFO does not suspend or affect the status of appellants' licenses to sell legitimate and authorized insurance products, and appellants are still allowed to conduct legitimate business. See White Const. Co., Inc. v. State, Dep't of Transp., 651 So.2d 1302, 1305 (Fla. 1st DCA 1995) (upholding IFO, finding that the action of placing a limerock pit on conditional status to pretest the limerock for stability, rather than suspending or revoking approval of the mine, was narrowly tailored).
Because the IFO is legally sufficient, we affirm.
ERVIN and VAN NORTWICK, JJ., CONCUR.
NOTES
[1] The IFO was issued against seven other individuals or entities who have not joined in the appeal.